# Exhibit A

*Hand Delivered*

Approved, SCAO

Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff  *12-16-21 1:57 pm*
3rd Copy -Return

*AD*

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>21-016917-CD<br>Hon.David J. Allen |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-0250

| Plaintiff's name(s), address(es), and telephone no(s)<br>Ryan, Ramono | v | Defendant's name(s), address(es), and telephone no(s).<br>Blue Cross Blue Shield of Michigan |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no

David C. Peters 48648
PO Box 51787
Livonia, MI 48151-5787

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.     **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>12/8/2021 | Expiration date*<br>3/9/2022 | Court clerk<br>Angila Mayfield |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

SUMMONS

Case No. : **21-016917-CD**

---

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

---

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☑ **OFFICER CERTIFICATE**          **OR**          ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:     (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:     (notarization required)

☒ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

_____ List all documents served with the Summons and Complaint _____

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) |
|  |  |  |  | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
_____ Date

My commission expires: _____     Signature: _____
_____ Date                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

---

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
_____ Attachments
_____ on _____
                                   Day, date, time

on behalf of

STATE OF MICHIGAN

IN THE 3RD JUDICIAL CIRCUIT

COUNTY OF WAYNE


**RYAN ROMANO,** on behalf of HIMSELF
individually and for all others similarly situated


      **Plaintiffs,**                              CASE NUMBER: 21-016917-CD
-CD
                                           HON.   DAVID J. ALLEN

      vs.


**BLUE CROSS BLUE SHIELD
OF MICHIGAN,** a Michigan Corporation


      **Defendant**

----------------------------------------------/
Dave Peters
Attorney for Plaintiff
Pacific Justice Institute
Metro Detroit Office
PO Box 51787
Livonia, MI 48154-1787
Email:  dpeters@pji.org
Phone: (734) 743-5352
----------------------------------------------/


"Title VII does not contemplate asking employees to sacrifice their jobs to observe their religious practices." Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 456 (7th Cir. 2013)

1

*There are no other prior filings in this Circuit Court involving these parties and/or involving the same transaction and occurrence giving rise to this claim.*

## CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Now comes the plaintiff on behalf of himself and all other persons similarly situated who Complain against the above captioned Defendant for the following reasons:

## INTRODUCTION

1. This is a Title VII class action brought to remedy a pattern of religious discrimination by the Defendant BLUE CROSS BLUE SHIELD OF MCHIGAN (hereafter "BCBSM") against employees who requested religious accommodations from the Defendants governmental inspired mandate that its employees receive the COVID-19 vaccine.

2. This action seeks preliminary and permanent injunctive relief before Plaintiffs are permanently fired from their jobs.

3. In accordance with the now reversed governmental OSHA mandates, the Plaintiffs are scheduled to be placed on unpaid administrative leave on or about December 10, 2021, and will be permanently terminated on or about January 4, 2022 if they refuse to submit to the COVID-19 Vaccine.

4. BCBSM has refused to comply with its obligations under Title VII of the Civil Rights Act of 1964, (Pub. L. 88-352), codified at 42 U.S.C. § 2000e et seq. ("Title VII"), and has informed certain employees, including your named Plaintiff, that their requests for

2

religious exemptions were denied, that they will be suspended without pay on December 10, 2021 and they will be considered to have "voluntarily resigned" (i.e., they will be terminated) on January 4, 2022.

5.   BCBSM's actions have left Plaintiffs with the impossible choice of either taking the COVID-19 vaccine, at the expense of their religious beliefs or losing their livelihoods.

6.   BCBSM's actions Violate Title VII and the First Amendment to the United States and Michigan Constitution by denying reasonable accommodations for religious exemptions.

7.   BCBSM's actions violate due process, public policy, equity, fairness, and common sense which alone give this court authority to act.

8.   Under Title VII, if an employee seeks a religious accommodation American employers cannot summarily impose employer-preferred workplace rules which abridge an employees sincerely held religious beliefs without genuine and good-faith dialogue and consideration of proposed accommodations and objective evidence.

## PARTIES

9.   Defendant BCBSM is a Michigan Nonprofit Corporation associated with Blue Cross Blue Shield with offices located in Detroit, Michigan.

10.   Plaintiff, individually, is a Michigan resident who works remotely for the Defendant in Wayne County out of the Detroit, Michigan BCBSM office located at the Renaissance Center in Detroit, Michigan.

11.   Plaintiff is a representative member of the class of employees and contractors at BCBSM who:

3

a.      Were threatened with suspension without pay for refusing the COVID-19 vaccination.

b.      Were threatened with permanent termination for refusing the COVID-19 vaccination.

c.       Offered BCBSM a written religious exemption request to receiving the COVID-19 vaccination.

d.      Were denied their religious exemption request to receiving the COVID-19 vaccination.

e.      Some unknown class members have other and additional reasons for refusing the COVID-19 vaccination including natural immunity and medical exemptions.

10.    Plaintiffs all have sincerely held religious beliefs and have made a personal decision, after prayer and contemplation and in some cases consultations with religious authorities, and heartfelt research that the vaccine is not the correct choice for them to personally put into their bodies.

11.    Plaintiffs have sincerely held beliefs that knowingly using a medicine or vaccine that was derived in whole or in part from the use of aborted fetal cells is contrary to their religious beliefs and practices.

12.    Some Plaintiffs also have natural immunity in addition to having sincere religious beliefs and failing to exempt them from the vaccine requirements is arbitrary and capricious with no support in law, fact, or science.

13.    As of the time of writing this Complaint, there were at least 140 peer reviewed research studies which show Natural Immunity is equal to or superior to Vaccinated Immunity.[1]

**CLAIMS**

---

[1] For a complete list of research that is current as of December 7, 2021, see https://brownstone.org/articles/79-research-studies-affirm-naturally-acquired-immunity-to-covid-19-documented-linked-and-quoted/

4

14.   Title VII requires the employer to reasonably accommodate an employees sincerely held

religious beliefs and does not permit an employer to deny a requested accommodation

because of "increased risk."

    a.    Fundamentally, the idea that employees seeking religious accommodation may be terminated merely upon a claim of "increased risk" is flawed as a matter of law.

    b.    Under Title VII the employer's burden is to show "undue hardship"—and merely "increased" does not without more equal "undue." See, e.g., Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 455 (7th Cir. 2013) ("Title VII requires proof . . .of hardship, and 'undue' hardship at that."); Anderson v. Gen. Dynamics Convair Aerospace Div., 589 F.2d 397, 402 (9th Cir. 1978) ("Undue hardship means something greater than hardship.").

    c.     showing "undue" hardship and is therefore insufficient to satisfy BCBSM's statutory responsibility to identify undue hardship.

    d.    The Defendants apparent reliance on "increased risk" is an attempt to import a wholly new legal standard, not countenanced by any statute, rule, regulation or case, to justify summarily discharging employees seeking religious exemptions.

    e.    The law sensibly imposes a qualitative/quantitative, evidence-based standard. See, e.g., Nottelson v. Smith Steel Workers D.A.L.U. 19806 which was not met in this case.

15.   To be clear, Plaintiffs do not concede they pose any increased risk whatsoever. C.F. AFL-

CIO, 643 F.2d 445, 452 (7th Cir. 1981) (rejecting "conjectural" undue hardship claim);

Brown v. Gen. Motors Corp., 601 F.2d 956, 961 (8th Cir. 1979) (speculation not

sufficient to discharge burden to prove undue hardship); Anderson, 589 F.2d at 402

("Undue hardship cannot be proved by assumptions nor by opinions based on

hypothetical facts."); Drazewski v. Waukegan Dev. Ctr., 651 F. Supp. 754, 758 (N.D. Ill.

1986) (speculation does not meet undue hardship standard).

    a.    Defendants claims regarding undue hardship are predicated on State action, specifically the threatened OSHA mandates and federal executive department pressure.

5

b.  Defendants claims regarding undue hardship are predicated on State actions that the courts have consistently overruled including a 5th Circuit nationwide injunction and a number of other rulings.

c.  Courts have consistently declared that the federal mandates upon which the Defendants in the case at bar hang their "undue hardship" claim is unconstitutional and should not be relied upon.

d.  The science does not support the proposition that the COVID 19 Vaccine protects against the spread of SARS COV-2.

e.  The science does support the proposition that the Vaccine provides at least some temporary protection for the vaccine recipient from death or serious consequences of the disease.

f.  The personal protection of an individual Plaintiff is insufficient cause to warrant terminations and the denial of religious and medical exemptions.

g.  The personal protection of an individual Plaintiff is insufficient cause to warrant terminations and the refusal to provide reasonable accommodations for such exemptions.

16.  Title VII requires the Defendants and Plaintiffs to engage in an interactive process to determine mitigation strategies to accommodate a Plaintiff's sincerely held religious beliefs.

a.  While an interactive process was apparently engaged with a meeting between the Plaintiffs and the supervisors, the process was done in a biased and/or unfair way.

b.  Defendants have failed to reasonably accommodate the Plaintiffs sincerely held religious beliefs.

17.  Basic principles of law and equity require an adverse action taken by an employer or other individuals to comport with reason, justice, to not be arbitrary or capricious, and to be the least restrictive alternative to achieving the compelling interests of the employer.

a.  The COVID-19 Vaccine Mandate is unsupported by scientific inquiry, reason, and logic and is thus arbitrary and capricious.

      b.      No science supports the proposition that the COVID-19 Vaccine Mandate achieves the narrow goal of preventing the spread of SARS COV-2.

      c.      There are many less restrictive alternatives to prevent the spread of SARS COV-2 and accommodate the Plaintiffs including masking, distancing, working from home, and other measures that fall well short of summary termination.

18.    There is apparently no dispute from BCBSM that each of the COVID-19 vaccines currently available in the United States were developed or tested using cell lines derived from aborted babies.

19.    Plaintiffs' beliefs regarding their obligation to treat their bodies as the "temple of the Holy Spirit" and to not participate in practices which could encourage the taking of innocent life are consistent with widely held Christian religious beliefs and shared by each of the Plaintiffs.

20.    BCBSM has not challenged the sincerity of the Plaintiffs religious beliefs.

21.    The claim that the Vaccine protects other people and ameliorates the spread of SARS COV-2 is false and the entire precipice that forms this belief and all the actions supported by this belief is false and the actions taken in response are arbitrary and capricious.

      a.      For years now we have been ordered to "follow the science" and in this case the science clearly and conclusively shows via number of papers that the vaccine does not prevent the spread of SARS-COV-2.

      b.      As of the writing of this Complaint on or about December 7, 2021, there is not a single study published showing that the vaccinated are less of a threat to spread SARS COV-2 than the unvaccinated and in fact all studies clearly show a higher viral load in the vaccinated vs. the unvaccinated.

      c.      One study found that the viral load in the pharynx of the vaccinated was 251 times the viral load in the pharynx of the unvaccinated.[2]

---

[2] https://peckford42.wordpress.com/2021/08/31/scientists-fully-vaccinated-carry-251-times-the-covid-viral-load-as-unvaccinated/

      d.      Thus, the claim that BCBSM is "protecting" their employees by firing the disobedient who have religious views is a false flag and a red herring that is wholly unsupported by the science.

22.      Defendants have violated Title VII, 42 USC Section 2000e and parallel State statutes under Title VII including the Elliot Larsen Civil Rights Act.

      a.      The Plaintiffs have each submitted a request for a religious accommodation pursuant to the requirements of Title VII.

      b.      Defendant has failed to articulate with particularity what the undue hardship on the corporation is as to any of the Plaintiffs.

      c.      Defendant has given the Plaintiffs an ultimatum of taking the vaccine in violation of faith-based conscience or being placed on unpaid leave as of December 10, 2021 and being summarily terminated from their jobs on January 4, 2021.

      d.      This ultimatum is an adverse employment action that has been taken against each plaintiff.

      e.      Defendants did not engage in a meaningful review of the request for a religious accommodation as required of employers under Title VII.

      f.      Defendants did not offer reasonable accommodations to the Plaintiffs before terminating them or threatening to terminate them.

      g.      Plaintiffs have filed complaints with the Equal Employment Opportunity Commission. Each of the complaints are still pending.

      h.      They seek injunctive relief so that their requests for religious accommodation can be individually accessed in accordance to each individual's job duties.

      i.      For those that have natural immunity, required vaccination is not an accommodation, is arbitrary, capricious, and dangerous to those employees who have contracted and recovered from COVID-19.

23.      Plaintiffs will suffer irreparable harm unless this court grants their request for an injunction preventing their final termination.

      a.      The Plaintiffs have and will suffer irreparable harm which includes loss of employment, status, prestige, lost wages, lost seniority, future employment, and

other monetary and nonmonetary damages as a consequence of following their sincerely held religious beliefs in denying the COVID-19 Vaccine.

b.    Plaintiffs will suffer irreparable by the loss of their religious liberty if they take the vaccine or loss of employment if they do not.

c.    At least one court in Chicago has ruled that you cannot "unvaccinated" a person and so forcing an unwanted vaccine on a population is itself a form of irreparable harm ruling: "An award of back pay or reinstatement cannot undo a vaccine. Nothing can.".[3]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a.    Preliminary and permanent injunctive relief against the Defendant BCBSM enjoining the termination of Plaintiffs and requiring it to provide an individualized assessment of each of the Plaintiffs' requests for religious accommodation and articulating for each plaintiff what undue hardship, if any, is imposed on the organization if an accommodation is granted;

b.    Economic damages against the Defendant;

c.    Nominal damages against all Defendants

d.    Attorneys' fees

e.    Costs of suit;

f.    Any and all other appropriate relief to which Plaintiffs may be entitled.

Respectfully Submitted,

_S_

Dave Peters, JD, MS, PhD, Esq.
Attorney for Plaintiffs

---

[3] Cook County District Judge Raymond Mitchell in <u>Police Unions vs. City of Chicago</u> Case No. CH-05276.

STATE OF MICHIGAN

IN THE 3RD JUDICIAL CIRCUIT

COUNTY OF WAYNE


**RYAN ROMANO,** on behalf of HIMSELF
individually and for all others similarly situated

      **Plaintiffs,**                            **CASE NUMBER: 21-016917-CD**
                                                **HON.   DAVID J. ALLEN**

      **vs.**


**BLUE CROSS BLUE SHIELD
OF MICHIGAN,** a Michigan Corporation

      **Defendant**

--------------------------------------------------/
Dave Peters
Attorney for Plaintiff
Pacific Justice Institute
Metro Detroit Office
PO Box 51787
Livonia, MI 48154-1787
Email:  dpeters@pji.org
Phone: (734) 743-5352
--------------------------------------------------/


### PLAINTIFF's MOTION AND APPLICATION FOR PRELIMINARY INJUNCTION AND FOR EVIDENTIARY HEARING ON IMPOSITION OF A PERMANENT INJUNCTION

NOW COMES THE PLAINTIFFS, by counsel, and for their Motion state as follows:

1.    Plaintiff is an employee of the Defendant BCBSM who works remotely and is a class

representative of all BCBSM employees who are about to be terminated by virtue of

1

having submitted a request for religious exemption to the COVID 19 Vaccination and having same wrongfully denied in violation of Title VII, the Elliot Larsen Civil Rights Act, and the 1st Amendments to the United States and Michigan Constitutions.

2. In response to governmental demands and pressure, Defendant, acting as an agent for the government, notified Plaintiffs in October, 2021 that they must submit to the COVID Vaccine or they would be placed on unpaid leave in December of 2021 and permanently fired on January 4, 2022.

3. Plaintiff and the other class members have been advised that the employer will consider the refusal to submit to the COVID Vaccine by January 4, 2021 to be a "Voluntary Quit" from their employment.

4. Plaintiff and the other class members tendered a religious exemption request with the Defendant on or about November, 2021 based on their sincerely held religious beliefs.

5. As of the time of filing this matter, Plaintiffs were zealously pursuing their rights and were not dilettante in any way with the matter being filed at the earliest time the case became ripe for adjudication.

6. Some of the class members have already contracted COVID and have antibodies to the infection.

7. There are legitimate and important questions of procedure, law and equity for this court to decide.

8. To prevail in their Motion for Injunction, Plaintiffs must show 4 elements: 1). Likelihood of prevailing on the merits; 2). Irreparable Harm will accrue unless the court grants the request; 3). Balance of Equities favors the injunction; and 4). Granting the injunction is in the public interest.

9.    The likelihood of prevailing on the merits is largely subsumed in TRO and Injunction Requests with the issue of irreparable harm meaning Plaintiff cannot prevail on the merits of an equitable request for injunction absent a showing of irreparable harm.

10.    Plaintiffs have already been irreparably harmed by the actions of the Defendant.

11.    Plaintiffs have all been put on unpaid leave from their jobs and will all be terminated on January 4, 2022 from their jobs and will suffer irreparable, nonmonetary harm to their reputation, work history, status, prestige, lost wages, lost seniority, future employment, and other monetary and nonmonetary damages.

12.    Plaintiffs are not merely concerned about a mere job that can be replaced but a career that has been built over a lifetime of work and effort.

13.    Plaintiff's careers are built on relationships with other medical providers, and satisfied patients, and the actions of Defendant in placing Plaintiffs on unpaid disciplinary leave, are irrevocable harms to the Plaintiff's reputation and future work environments and said harms are ongoing and cannot be monetarily compensated.

14.    Said breaches and other harms are caused by the Defendants violations of Title VII specifically in denying the Plaintiffs a reasonable accommodation for their sincerely held religious beliefs.

15.    The underlying legal justification for Defendants continuing violations of Title VII are federal pressure from OSHA regulations which have been enjoined by the 5th Circuit.

16.    With the 5th Circuit Injunction, there is no compelling or legal justification for the Defendants violation of Plaintiffs religious freedom to reject the injection of substances into their bodies which violates their sincerely held religious beliefs.

3

Wherefore, Plaintiff's pray this Honorable Court to:

1. **GRANT** its Motion for Preliminary Injunction.

2. **ENJOIN** the Defendant from terminating the medical employees on January 4, 2022.

3. **FIND** that the Defendants violated the required review for Religious Exemptions under Title VII which envisions an interactive process to determine whether any hardships can be accommodated;

3. **SCHEDULE** an Evidentiary Hearing to determine if a permanent Injunction should be issued against terminating medical employees of the Defendant whose sincerely held religious beliefs have not been properly weighed and considered;

4. **DECREE** that workers without patient contact cannot be forced to get a Vaccine to protect patients.

4. **ORDER** that based on the overwhelming weight of scientific evidence, common sense, and many years of human history, that natural immunity is at least equal to Vaccinated "immunity."


Respectfully Submitted,

/ S
_____
Attorney for Plaintiffs

4

STATE OF MICHIGAN

IN THE 3RD JUDICIAL CIRCUIT

COUNTY OF WAYNE


**RYAN ROMANO,** on behalf of HIMSELF
individually and for all others similarly situated


    **Plaintiffs,**

                                            CASE NUMBER: 21-016917-CD
                                            HON.   DAVID J. ALLEN

    **vs.**


**BLUE CROSS BLUE SHIELD
OF MICHIGAN,** a Michigan Corporation


    **Defendant**

-----------------------------------------------/
Dave Peters
Attorney for Plaintiff
Pacific Justice Institute
Metro Detroit Office
PO Box 51787
Livonia, MI 48154-1787
Email:  dpeters@pji.org
Phone: (734) 743-5352
-----------------------------------------------/


## <u>PLAINTIFF's BRIEF IN SUPPORT OF MOTION AND APPLICATION FOR PRELIMINARY INJUNCTION AND FOR EVIDENTIARY HEARING ON IMPOSITION OF A PERMANENT INJUNCTION</u>

Pursuant to MCR 3.310 Plaintiff brings suit and applies to this Honorable Court for an

Evidentiary Hearing on Ordering a Preliminary Injunction, and such other equitable relief as the

Court deems appropriate.

1

## FACTS

Plaintiff is a class representative of those employees of the defendant who have:

1.      Been notified that they are required to submit to the COVID 19 vaccination.

2.      Raised religious and other exemption requests objecting to the vaccine by virtue of their sincerely held religious beliefs and other reasons.

3.      Been denied their religious exemption and other requests.

Defendant BLUE CROSS BLUE SHIELD OF MICHIGAN is a Division of Blue Cross Blue Shield with offices throughout the State of Michigan.

On or about October and November of 2021, all Plaintiffs were notified by their employer/contractor that they were required to submit to the COVID Vaccination or else they would be terminated from their positions.

During the time period of October and November 2021, Plaintiffs each filed a request for religious exemption to the COVID Vaccine through an administrative process established by the Employer/Defendant.  No valid determination was ever made regarding the sincerity of their religious beliefs.  Instead, the Defendant refused to consider the validity of the Plaintiffs request, or evaluate the sincerity of their religious beliefs as required by the U.S. and Michigan Constitutions, case precedent, Title VII, and Elliot Larsen.

Plaintiffs will show that this determination and the manner in which it was made violates the First Amendment to the United States Constitution, case law and precedent, Title VII, and basic equitable principles of due process, fairness, equity, and justice.

Clearly, this "Private" mandate which has the same due date as the court rejected OSHA mandates (January 4, 2022) is, at least in part, influenced by, and reliant upon, the fear of the Federal Mandate.  While extraordinary times do indeed call for extraordinary measures, **there is**

2

**no pandemic exception to the Bill of Rights**.  Congress shall make no law respecting the

establishment of religion and may not infringe upon or hinder the practice of religion while

private parties acting under color of federal mandates, are equally bound under Title VII to avoid

infringing or even disproportionately impacting the practices of religious observers.  The

Vaccine Mandate enforced with draconian job terminations disproportionately impacts Christian

believers and infringes on the practice of their religion.  Defendants attempts to justify their

actions as "private decisions" even while following the precise dates and timetables of the

enjoined federal mandates weigh against the claim that Title VII money damages are the only

remedy.


## LAW- TEMPORARY RESTRAINING ORDER REQUEST

Decisions on granting or denying a temporary restraining order are within the discretion

of the district trial court (Psychological Services of Bloomfield, Inc. v. Blue Cross & Blue

Shield, 144 Mich. App. 182, 375 N.W.2d 382, 1985 Mich. App. LEXIS 2798).

This court must also consider four (4) factors:  1) whether the moving party demonstrates

a strong likelihood of success on the merits; 2) whether the moving party would suffer

irreparable injury without the order; 3) whether the order would cause substantial harm to others;

and 4) whether the public interest would be served by the order (Chirco Title Agency, Inc. v.

Tocco, 2015 Mich. App. LEXIS 969).  These four (4) factors are not separate but interrelated

concerns that must be balanced together.

Plaintiffs have met each of these requirements.  Plaintiffs have filed a Complaint alleging

they will suffer irreparable injury.  Plaintiffs will all be fired from their jobs if they refuse to

submit to the COVID Vaccine by January 4, 2021.  Plaintiffs have already been placed on unpaid

leave and will be deemed to have "voluntarily quit" on January 4, 2021 unless they submit to the COVID 19 vaccination over their religious and other objections.

## A. Likelihood of success on the merits

As outlined in this brief, the Defendants actions are in clear violation of the United States Constitution, case law and precedent, Title VII, Elliot Larsen, and basic equitable principles of due process, fairness, equity, and justice.

   1.   Denial of Religious Exemption

   A. *Establishment Clause*

Plaintiffs were denied a religious exemption without due consideration or individual consideration of the sincerity of their religious beliefs. The free exercise clause guarantees the rights of all Americans the right to believe and profess whatever religious doctrines they desire (*Employment Division vs. Smith* 494 U.S. 872, 877 (1990). Government may not regulate, compel, or punish religious beliefs (*Torcasco vs. Watkins* 367 U.S. 488, 492-93 (1961). Nor may government impose special burdens or requirements in violation of a person's sincerely held religious beliefs (*Smith* Id). Nor is the prohibition against regulating religious beliefs subject to a balancing test between religious liberty and governmental interests (Id). Nor is the prohibition limited but is rather absolute and not subject to limitations (Id). As famously stated:

> If there is a fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion or force citizens to confess by word or act their faith therein (*Sherbert* 374 U.S. 402).

4

This prohibition encompasses forcing citizens to violate their faith by deed including by compelling an act that violates their faith.

The plain wording in the 4-corners of the Constitution protects the *exercise* of religion, not merely the right to *believe* in religion.  The protection of religion freedom thus includes all aspects of observance and practice (*Hobby Lobby* 134 S. Ct. 2751, 2770-2773).

The protection given to Americans by the Free Exercise Clause prohibits "indirect coercion or penalties on the free exercise of religion just as surely as it protects against outright prohibitions on religious exercise" (*Trinity Lutheran* 528 U.S. Slip Op. at 11).

The rule implemented by this Defendant in response to governmental pressure from the federal executive branch and other governmental units does not have a neutral effect on religion. The Vaccine Mandate imposed by this Defendant is, in fact, a targeted measure aimed directly at religious believers for which many raise legitimate and concerning objections.  First, the Vaccine itself was created using fetal stem cells.[1]  A person of religious conviction is entitled to reject any Vaccine made from what they sincerely believe was created in whole or in part from the body parts of murdered babies.  A contrary ruling from this court against Plaintiffs with this sincerely held belief would be tantamount to ordering persons of religious faith to perform or encourage abortions, or to harvest body parts from children. Second, the rule appears directly targeted at believers, singling them out for special treatment and terminating them for holding certain sincere, religious beliefs.  Third, even absent clear proof of discriminatory intent, the disproportionate impact of this rule on persons of religious faith is enormous.

---

[1] The original documentation on the use of fetal cells from abortions to develop the vaccine was covered up by both the CDC and Pfizer:  https://www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-reveals-internal-emails-from-chief/

5

This rule is neither neutral nor is it generally applicable and it restricts other constitutional rights beyond freedom of religion including free speech, freedom of conscious, medical freedom, medical privacy, and the right to bodily integrity. Thus, this court is obligated to examine this rule under a standard of Strict Scrutiny (*Yoder* 406 U.S. 427; c.f. *Smith* Id; *Wolley vs. Maynard* 430 U.S. 705).

Strict Scrutiny is the most rigorous standard in Constitutional Law requiring the violator to demonstrate a compelling state interest and that it has adopted the least restrictive means of achieving that interest (*Parents Involved vs. Seattle School District* 551 U.S. 701). The Defendant must show that the challenged rule "advances interests of the highest order" and is "narrowly tailored in pursuit of those interests" and "only in rare cases will a law survive such scrutiny" (*Church of the Lukumi* 508 U.S. 546).

Even if this Defendant can show that the law or rule upon which they rely to impose this mandate is facially neutral, their interpretation to deny all religious exemptions to frontline medical workers cannot be maintained as this interpretation patently discriminates against religious adherents based on their sincerely held religious beliefs both in the arena of disparate impact and in actual application of the rule.

Further, the fact this Defendant is a private employer provides no protection for violations of religious liberty. A private company can no more discriminate on the basis of race than they can on the basis of religion. A private company may not single out, for example, African Americans for treatment that discriminates or even disparately impacts racial minorities any more than a private company can maintain violations of the discriminatory application of religious freedom. Such religious freedom is protected under our Constitutional system whether initiated by a governmental unit or by private requests or complaints, and particularly if such

private action is initiated in response to direct governmental rule making, or financial and political pressure from governmental units.  Neither private nor governmental actions that impermissively violate religious freedom are protected under our Constitutional system (*Fowler* 345; *Niemotko vs. Maryland* 340 U.S. 268).

A private employer who applies a discriminatory interpretation or application against those with sincerely held religious beliefs is not protected any more than a governmental division is protected and neither may violate religious freedom by disproportionately impacting or targeting religious practices or beliefs.  The public policy reasoning behind this longstanding rule is well known:  We are stronger through accommodation of religious, racial and other differences in belief and practice than through segregation, discrimination or isolation.  Religious adherents must be embraced as full members of society, able to contribute through use of public accommodations, government programs and private employment.

Neither government nor private employers, nor private actors interpreting a governmental diktat, law, rule, or judicial finding may discriminate against religious beliefs nor may they interpret or make a rule that has a disparate impact on religious beliefs.  If such actions are taken, the court shall review them under a strict scrutiny standard.  The actions of Defendant cannot possibly survive a strict scrutiny standard.  The threatened terminations disproportionately impacts believers.  In fact, the Denials of religious exemptions *only* affects believers and certain religious practices.  The threatened terminations are directed against *all* strong Christian believers with a personal and sincere religious belief opposed to the fetal cells used in the creation of the Vaccine, and/or who are convicted by their personal religious beliefs that submitting to the COVID Vaccine would violate the practice of their religion.

Neither a private actor nor a Court may inquire into the validity of a persons sincerely held religious beliefs and may only examine whether those beliefs are in fact sincerely held (*Hobby Lobby*, Id).  A person has an individual right to his or her religious beliefs and neither a private actor nor a court may even consider whether the persons belief is reasonable or consistent, or even in line with the religious authorities and rule makers for his or her particular religion (Id).  The only issue is the *sincerity* of the Plaintiffs personal beliefs.

Wherefore, Plaintiffs respectfully pray that this court enter its order for Temporary Restraining Order and ENJOIN all terminations at the Defendant for refusal to violate their religious beliefs.

### B. *Title VII/Eliot Larsen*

The Civil Rights Code (42 USC 2000) and the Michigan correlate, the Elliot Larsen Civil Rights Act prohibits discrimination in employment and requires an employer to "reasonably accommodate" an employee's religious observances or practices unless doing so would impose an "Undue Burden" on the employer.  Title VII does not require religious accommodations at all costs but does demand and expect a reasonable cooperation process between employees and employers (c.f. *Philbrook* 479 U.S. 69).  For example, even if it is burdensome for employers, they are nevertheless required to accommodate time off for religious holy days and observances, wearing religious symbols, inviting attendance to worship, and even proselytizing at work during work hours all the way to the point that such speech becomes excessive or harassing (c.f. Executive Order:  Clinton Guidelines on Religious Exercise and Religious Expression in the Federal Workplace section 1(A) Aug 14, 1997).

In this case, the Defendant made little attempt to reasonably accommodate the Plaintiffs religion. The Defendant has made no showing that doing so would constitute an unreasonable burden. The Defendant has made no attempt to reasonably cooperate in any type of process between the employees and employer. Thus, Defendants have violated Title VII and failed to show the refusal to submit to the Vaccine is an unreasonable burden.

Wherefore, Plaintiffs respectfully pray that this court enter its order for Temporary Restraining Order and ENJOIN all terminations at the Defendant for refusal to violate their religious beliefs.


C. *Other Federal Statutes*

Congress and the courts have taken a special interest in programs touching on abortion, sterilization, and other procedures and practices that might violate religious liberty. Both Congress and the courts have specifically exempted medical professionals with religious beliefs contrary to abortion or various family planning techniques from performing procedures or prescribing medications related to those objectives (c.f. 42 USC 18023(b). Similarly, prescribers and providers are not required to perform, provide coverage for, or pay for abortions (Id). In this case, these are medical providers opposed to abortion, or have other and/or additional sincerely held religious beliefs they believe would be violated by participating in an act, such as in submitting to the COVID Vaccine, that would endorse, benefit from, encourage, or potentially cause additional abortions. These Plaintiffs categorically oppose the use of fetal tissue in the development of medicine and they will not take such substances into their bodies for this and other sincerely held religious beliefs.

9

Wherefore, Plaintiffs respectfully pray that this court enter its order for Temporary Restraining Order and ENJOIN all terminations at the Defendant for refusal to violate their religious beliefs.

### D. The *Vaccine mandate is unenforceable, arbitrary, and capricious*

The law defines "Arbitrary and capricious" as "an absence of a rational connection between the facts and choices made (*Natural Resources. v. U.S.*, 966 F.2d 1292, 97, (9th Cir.'92). A clear error of judgment; an action not based upon consideration of relevant factors and so is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or if it was taken without observance of procedure required by law 5 USC. 706(2)(A) (1988). The stated objective of the COVID Vaccine mandate is to prevent the spread of COVID. However, the Vaccine does not accomplish this objective and the Vaccine mandates unrelated to the stated goal of limiting the spread of COVID and are therefore arbitrary and capricious. The COVID Vaccine is not a true vaccine as the word has been understood for several centuries as an injection that generates immunity, but rather a mildly efficacious prophylaxis that apparently prevents the worst consequences of COVID including hospitalization and death for an as yet unknown amount of time.

Up until May, 2021, the definition of "Vaccine" according to the CDC was: "A *product that stimulates a person's immune system to produce immunity to a specific disease.*" On May 16, 2021 the CDC changed the definition of "Vaccine" to: **A preparation that is used to stimulate the body's immune response against diseases.**"[2] This is quite a remarkable change from

---

[2] Due to social and mainstream media censorship of "COVID Misinformation" this is information is only available linked to a well-known conservative media outlet at: https://pjmedia.com/news-and-politics/matt-margolis/2021/09/08/the-cdc-just-made-an-orwellian-change-to-the-definition-of-vaccine-and-vaccination-n1476799

hundreds of years of human understanding regarding Vaccine efficacy. Specifically, Vaccines were used to produce "Immunity" all the way to May of 2021 while after that date, now we are to believe that Vaccines merely "Stimulate" the immune system and apparently are no longer expected to provide immunity.

Semantical definitional changes aside, one thing we can be certain of is that the COVID Vaccine does NOT provide immunity as has been understood for centuries. The recent experience in Israel[3] with most hospitalization occurring among the Vaccinated with breakthrough infections, and the rapidly increasing number of breakthrough infections in the United States prove that the COVID Vaccine does not provide Immunity but at best prophylactic protection for the Vaccine recipient, not protection for others. A recent study out of University of California- Davis found that viral loads in the nose and throat of unvaccinated subjects were no different than the viral loads in the nose and throat of unvaccinated subjects (Acharya, 2021, MedRXIV).[4] Another paper published in the prestigious medical journal Lancet claims that vaccinated health care workers have more than 250 times the viral in their noses and throats than the vaccinated (Vinh Chau, 2021).[5]

In short, while there is fairly sold scientific evidence the Vaccine prevents the recipients of the Vaccine from the most serious consequences of COVID such as death or hospitalization,

---

[3] https://news784.com/2021/08/24/israel-struggles-with-covid-surge-despite-mass-vaccinations/

[4] Charlotte B. Acharya et al (2021). MedRXIV, "No Significant Difference in Viral Load Between Vaccinated and Unvaccinated, Asymptomatic and Symptomatic Groups Infected with SARS-CoV-2 Delta Variant" located at https://www.medrxiv.org/content/10.1101/2021.09.28.21264262v1

[5] Nguyen Van Vinh Chau et al (2021). Lancet. "Transmission of SARS-CoV-2 Delta Variant Among Vaccinated Healthcare Workers" located at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897733

there is no good scientific evidence the Vaccination decreases the chance of spreading COVID. In response to these studies, and several other studies which all found the same result- namely that the Vaccinated do not protect the Unvaccinated but only protect themselves- the CDC reissued mask guidelines for Vaccinated persons, stating: "If you are fully vaccinated, to maximize protection from the Delta variant and prevent possibly spreading it to others, wear a mask indoors, in public."[6] This is a clear admission that the COVID Vaccine does NOT induce immunity. Those who are immune to a disease almost never spread the disease and do not need to wear a mask. The science is very strong that the COVID Vaccine does NOT protect others but only protects the person receiving the Vaccine.

If the COVID Vaccine only protects the recipient of the Vaccine, then any mandatory Vaccination demand with the intent of protecting the patients and coworkers of unvaccinated workers is, by definition, arbitrary and capricious with no rational basis between the stated objectives and the actual objectives.

Wherefore, Plaintiffs respectfully pray that this court enter its order for Temporary Restraining Order and ENJOIN all terminations at the Defendant for refusal to violate their religious beliefs.

### E. The Vaccine Mandate is unenforceable, arbitrary and capricious on the basis of natural immunity

The foregoing facts justify this court acting but there is more. It is expected that most of the Plaintiffs in the class herein not only have religious objections to the COVID Vaccine, they also have natural immunity AND the antibodies to prove it. Natural immunity has always been

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html

known to be superior to vaccinated immunity. Everybody knows and has known for many centuries that if you get smallpox, or measles, or mumps, or chicken pox, or just about any other disease that you are immune to that disease going forward. Coronaviruses (like SARS COV-2) and other viruses that cause the common cold (Rhinoviruses and Enteroviruses) along with Influenza Viruses tend to mutate into other forms very quickly and while one may get immunity to one form of such Viruses, you may quickly lose immunity to other forms. Such has been the case with the "Delta Variant" of COVID which is one of those forms that quickly evolved to bypass the immunity humans develop to COVID. However, in this case we are not comparing the effects of Natural Immunity on the likelihood of subsequent infection but rather *comparing* natural immunity to vaccinated immunity. If they are similar, or if vaccinated immunity is superior (as it is in just about every other virus known to man)[7] then ignoring Vaccinated immunity and requiring all those with natural immunity to Vaccinate is arbitrary and capricious.

A number of studies have addressed this issue and all have found the same thing- that natural immunity derived by getting the disease and recovering is far superior to vaccinated immunity. The leading study from Israel shows that Natural Immunity following infection is at least 6-7 times *better* than Vaccinated Immunity.[8] The arguments that the Vaccines are safer than contracting the disease are no applicable to these Plaintiffs. They already have natural immunity. They were been exposed to COVID (primarily) by their patients in the course of

---

[7] "It is true that natural infection almost always causes better immunity than vaccines." Michigan government public health document: located at:
https://www.michigan.gov/documents/mdch/Waiver_Ed_Natural_Immunity_479884_7.pdf

[8] Sivan Gazit, MD MA; Roei Shlezinger, Galit Perez, Roni Lotan, et al. *Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections* MedRx Preprint available at: https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.full.pdf

risking their lives to save others.  They contracted COVID and have now recovered and furthermore, they can show that they have antibodies to the infection that are, in almost every case, superior to the antibody responses of the Vaccinated.   Forcing this cohort, who have contracted COID and recovered, are already immune to COVID, and have the antibodies, to submit to a Vaccine over their since religious objections is absurd and appears particularly sinister, with no apparent relationship to the stated cause of preventing the spread of COVID in the hospital.

In short, there is no rational basis between requiring those who are immune by virtue of having had the disease and recovered and preventing the further spread of COVID by mandating Vaccinations.

Wherefore, Plaintiffs respectfully pray that this court enter its order for Temporary Restraining Order and ENJOIN all terminations at the Defendant for refusal to violate their religious beliefs and for the reason that the science shows unequivocally that those with natural immunity have superior protection from COVID than even those who have submitted to the Vaccines.


F. *whether the moving party would suffer irreparable injury without the order*;

Plaintiff's will all be fired from their jobs on January 4, 2022 unless this court acts. Injury does not merely include monetary damages but loss of prestige, loss of seniority, reputation damages, and other monetary and nonmonetary damages.  While the scope of such damages can be disputed given the high professional standing and high employability of the Plaintiffs, it is not disputable that Plaintiffs will suffer irreparable injury on January 4, 2022 to the loss of their job on that date unless this court acts.

14

G. *whether the order would cause substantial harm to others*

The Court's Order will not cause any substantial harm to others. In fact, the Court's Order will act to protect and shield the Plaintiff's Employer, from liability.

H. *whether the public interest would be served by the order*

The interests of the Defendant are served by a Temporary Restraining Order and so are the interests of the public. The harm to the public from the court issuing an injunctive order is small. The harm to civil liberties and the general public caused by the chaos of these terminations is far larger than if the Court does not enter its Order stopping these illegal, unlawful, arbitrary, and capricious terminations.

I.    *Defendant will not suffer undue hardship by reasonably accommodating the Plaintiffs as required under Title VII*

The issue of whether something is an undue hardship for an employer and what is a reasonable accommodation to an employee depends on the specific facts of the case and ultimately boils down to whether the employer acted reasonably. *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1577 n.8 (7th Cir. 1997) (citing *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995), cert. denied, 515 U.S. 1152, 115 S. Ct. 2600, 132 L. Ed. 2d 846 (1995)) [**22]. Once the employer shows that it has offered an option that reasonably accommodates the employees religious needs and observances, the inquiry ends and the employers duty is satisfied

15

by offering an accommodation that "eliminates the conflict between the employment demands and the employees religious needs" (c.f. *Wright, 2 F.3d at 217*).

An employer carries the burden to accommodate and they must make an attempt to resolve a religious conflict (See *Redmond*, 574 F.2d at 902-03; *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), cert. denied, 485 U.S. 989, 99 L. Ed. 2d 503, 108 S. Ct. 1293 (1988); *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 145-46 (5th Cir. 1982). Nonetheless, the employer "cannot excuse [its] failure to accommodate by pointing to deficiencies in [the employee's] suggested accommodation." *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir. 1978), cert. denied, 442 U.S. 921, 61 L. Ed. 2d 290, 99 S. Ct. 2848 (1978).

Even if the employer makes an effort to accommodate, which did not happen in this case, the employer may still be liable if they fail to eliminate the employee's religious conflict. So long as there is a religious conflict, the burden remains on the employer to establish that it is unable to accommodate the conflict without incurring undue hardship. Smith, 827 F.2d at 1085. In this case, Defendant Ascension did not offer ANY reasonable accommodations and made no attempt whatsoever to satisfy the religious requirements of the Plaintiffs. The Defendant provided or offered no reasonable accommodation and is thus in violation of the First Amendment, Title VII and applicable Civil Rights Statutes and caselaw as a matter of law.

16

**III.    The extraordinary circumstances that prompted this litigation meet the standard of irreparable harm.**

In good faith, Plaintiffs in this action have forestalled claims for money damages precisely because the harm alleged is of a different—and more insidious—nature.  It is, indeed, the type of harm ably described by Defendant's proffered authorities as one that cannot be later rectified.

Defendant's actions certainly are causing financial distress to these Plaintiffs and many others similarly situated. But such damages have not impelled them to seek extraordinary relief from this Court. At its heart, the irreparable harm threatened by Defendant's actions strikes at the fundamental liberty interest that employees (hopefully) still possess in this country not to be forced to choose between their livelihood and their conscience. Were Plaintiffs to violate their consciences in order to save their jobs, no amount of money could compensate their internal angst, and it is most likely such spiritual distress would not be compensable.

Title VII jurisprudence is inextricably linked to the First Amendment, since both protect the free exercise of religion in related ways. Thus, controlling Title VII decisions such as *Adeyeye* invoke First Amendment precedents such as *United States v. Seeger*.  The harm to Plaintiffs' faith and conscience threatened by Defendant's actions is both real and irreparable.

Within the past month, an increasing number of federal courts have begun to sound the alarm and enjoin federal vaccine mandates, including those sought to be imposed on healthcare workers like Plaintiffs.    *Louisiana v. Becerra*, 2021 U.S. Dist. Lexis 229949 (W.D. La. Nov. 30, 2021) (granting states, including Indiana, injunction against federal vaccine mandate for Medicare and Medicaid-funded healthcare workers); *Georgia v. Biden*, 2021 U.S. Dist. Lexis

17

234032 (S.D. Ga. Dec. 7, 2021) (issuing preliminary injunction against federal vaccine mandate for federal contractors); *Kentucky v. Biden*, 2021 U.S. Dist. Lexis 228316 (E.D. Ky. Nov. 30, 2021) (same) *Missouri v. Biden*, __ F. Supp. 3d __, 2021 WL 5564501 (E.D. Mo. Nov. 29, 2021). The district courts in *Missouri* and *Louisiana specifically held that such mandates would cause* irreparable harm to liberty interests, including not just states' rights but individual liberties. Plaintiffs strongly agree.

While there only remains a short window of time in which this Court could forestall the irreversible effects of termination, and beyond doubt some of that harm is already irreversible, it can and it should act to protect federal law, practice and the Constitution to the extent possible.

### IV.    The Balance of harms and public interest favor Plaintiffs.

We conclude by briefly addressing the balance of harms and the public interest.  Courts were understandably hesitant to second-guess public health officials in the early days of the pandemic, when little was known about the disease and it was commonly assumed that both the virus and concomitant restrictions on civil liberties would be short-lived. Now, nearly two years into global restrictions, and with health officials refusing to relinquish their newly-obtained powers over every aspect of our lives, it is appropriate to rebalance interests so that hard-fought freedoms in the workplace do not vanish permanently.  In short, a state of emergency is a short-term remedy.  While there is no Pandemic Exception to the Bill of Rights or Federal Law, Plaintiffs agree that measures like 14 days to slow the spread or even 28 days to slow the spread is an emergency remedy that is permissible in our Constitutional framework but 700 days to slow the spread?   This is no longer an emergency measure justifying some deprivations of liberty but has become a full-fledged policy.  We are now at two full years of "emergency measures" with almost no legislation or legislative action to support them, no acknowledgement of improved

outcomes and treatments for the disease, and constitutional deprivations seemingly increasing in scope and impact every day, all while targeting Christian and health care workers for special treatment and unjust, unwarranted unlawful employment discrimination that is often wholly unsupported by "the science."

Defendant cannot argue that permitting unvaccinated workers to continue working is an "undue hardship." The predicate of such undue hardship was the draconian OSHA violation and fines that were pending and courts have overwhelmingly ruled against these government mandates. It is time for courts to acknowledge that these so called "private mandates" are nothing but subterfuge, hiding under color of federal regulations and mandates. Beyond doubt, but for the draconian federal mandates which have since been enjoined, Ascension would never have attempted to discriminate against its religious employees in this way. As such, Ascension cannot hide behind the fact it is a private employer. Increasingly, the line between private and public employers has been blurred and when federal mandates inspire and authorize a private employer to violate the Constitution, surely it cannot then claim 'no State action.'

There is no doubt that the harms from Defendant's vaccine mandate fall disproportionately on a certain protected class—religious adherents whose conscience does not allow them to receive the newly-mandated vaccines. Were such harms falling disproportionately upon—and stigmatizing—a particular race or ethnicity, surely Defendant would not suggest that the effects are merely financial, which may or may not be recoverable years from now.

In short, Plaintiffs seek a temporary reprieve and the Court can, of course, fashion a remedy appropriate to the circumstances. No wholesale change to Title VII claims is called for or requested. What Defendant proposes, however, is unchecked authority to deny religious

accommodations across-the-board, creating a harm that goes far beyond paychecks, and beyond the present.

## CONCLUSION

This is no ordinary time, and no ordinary employment case. Even among other recent vaccine mandate cases, Defendant's approach to religious accommodation requests is conscience-shocking. The injunctive relief sought by the Plaintiffs here would simply require the Defendant to do what it has always been required to do—engage in a true interactive process, exploring potential accommodations of the Plaintiffs in good faith. The sham process through which the Defendant has rejected so many sincere accommodation requests serves neither its patients nor the public interest. A preliminary injunction should issue to ensure that Title VII safeguards do not become yet another casualty of the pandemic.


Respectfully Submitted,

\S

_____
Attorney for Plaintiffs